## Zerby *against* Zerby.

A testator thus disposed of his estate: "I will that my three sons, namely, Jacob, Christian, and John, with all my land, shall hold vendue amongst themselves, and whosoever shall give the most for it shall have it, and that the money shall be divided amongst my three sons into equal shares." In pursuance of this devise one of the sons obtained the land, and died without paying all the purchase-money: *Held*, that that which remained unpaid was a lien upon the land, having a preference over other debts of the deceased devisee.

ERROR to the common pleas of *Berks* county.

John Zerby against Jacob Zerby's estate.

This was a feigned issue directed by the orphans' court of Berks county, between John Zerby and a creditor of Jacob Zerby, deceased, to ascertain whether John Zerby had a claim against .the estate of Jacob Zerby, and if so whether the amount due was a lien on the land of Jacob Zerby.

On the 27th of February 1809, Christian Zerby made his will, which was proved the 25th of September 1809, in which he devised his real estate to his sons Jacob, Christian and John (leaving no other children) with this proviso, that they should mutually fix the price among themselves, and he who offered the most for the farm should have it, paying to the other two two-thirds of the price so as to share alike, and also bequeathed his personal property to those sons share and share alike.

In one year after the death of Christian Zerby, the devisees fixed the price of the land at 2000 pounds, at which Jacob accepted it, on the following terms as to the payments: at the expiration of the second year Jacob was to pay each 200 pounds, and then 50 pounds per annum without interest. Christian was to receive the first 50 pounds, John the second 50 pounds, and so on until the 2000 pounds were paid, Jacob retaining one-third thereof for his portion.

When Jacob had paid the valuation money to Christian and John, they were to release the land. Christian was paid in full in 1829, and executed a release agreeably to the contract.

John received a part of his portion in the lifetime of Jacob, leaving a balance at the death of Jacob, who died in April 1832, of 1500 dollars.

Jacob became indebted to several persons in a considerable amount —made his last will and appointed John Zerby and David Crumback executors.

The executors petitioned the orphans' court for an order of sale for this tract and other real estate which Jacob had acquired by

purchase, for the payment of debt, &c.　The tract devised by Christian to Jacob Zerby was sold to Andrew Zerby for 1800 dollars. John Zerby claims to retain the amount of his claim, 1500 dollars, as found by the jury on the ground of its being a lien on this specific tract of land.

The individual creditors of Jacob Zerby contend that Jacob took the land discharged of John's portion under the will of Christian Zerby, deceased; and, therefore, his claim is to be postponed to their claims.

To maintain the issue on his part, the plaintiff gave in evidence the last will of Christian Zerby, dated the 27th of February 1809; proved the 25th of September 1809, the only material part of which is as follows:

"*Thirdly.* I will that after my death vendue shall be made, and all my debts shall be paid, and that my three sons, namely, Jacob and Christian and John, with all my land shall hold vendue amongst themselves, and whosoever shall give the most for it shall have it, and that the money shall be divided amongst my three sons into equal sheers, and after the death of my wife my three sons shall have in equal sheares all what she leaves behind."

John Potteiger, Esquire, sworn.　About two months before this release was executed by Christian, Jacob came to me to draw a release for Christian.　I advised him to have it drawn from both Christian and John.　He said no, he had not paid John and did not know when he could pay him.　I drew the release, and in about six weeks afterwards he said he had paid Christian and he had released.

There was much other evidence given on the question of payment which is not necessary to the full understanding of the case.

The court below instructed the jury that the purchase-money which remained unpaid to John Zerby was not a lien upon the land sold, and that he was not entitled to a preference over the other creditors of Jacob Zerby.　The jury found a verdict that the amount of 1500 dollars was due, but that it was not a lien.

*Hoffman* and *Greenough*, for plaintiff in error, cited 2 *Dall.* 131; 1 *Watts* 390; 17 *Serg. & Rawle* 13; 1 *Rop. on Leg.* 446; 1 *Vern.* 411; 2 *Vern.* 228; 8 *Watts* 198; 3 *Watts* 163; 6 *Binn.* 118; 7 *Serg. & Rawle* 76, 286; 1 *Rawle* 325; 1 *Paige* 32; 10 *Wheat.* 227; 17 *Wend.* 402; 6 *Ohio Rep.* 114.

*Smith*, for defendant in error.

The opinion of the court was delivered by

ROGERS, J.—The jury having decided that John Zerby was the creditor of his brother Jacob, the only question which remains is, whether the amount due is a lien on the land of Jacob Zerby. This point arises on the third clause of the will of Christian Zerby,

namely, " I will that after my death, vendue shall be made, and all my debts shall be paid, and that my three sons, namely, Jacob and Christian and John, with all my land shall hold vendue among themselves, and whosoever shall give the most for it, shall have it, and that the money shall be divided amongst my three sons, into equal shares, and after the death of my wife, my three sons shall have in equal shares all what she leaves behind."

Jacob became the purchaser of the land, under the will, but no deed has been given, nor has any release been executed by John, and, as has been before stated, the jury have found that part of the purchase-money remains unpaid. Is, then, the arrears of unpaid purchase-money a lien on the land purchased by Jacob? Until the price of the land was fixed, as the testator expresses it, by a vendue among themselves, the legal title was in the three devisees, and this title can only be divested by actual payment of the purchase-money. Jacob could not call for a conveyance of the shares of his co-devisees until he had fully complied with his part of the contract. By the will, the son is to have the property *who gives the most for it;* but the title did not vest in him who *agrees* to give the most for it; and this is the meaning for which the defendant in error contends, and which has received the sanction of the court of common pleas. Nor can I perceive either inconvenience or mischief which can arise from this construction. Jacob cannot complain of it; and a purchaser of his right would naturally require something more than the will as an exhibition of title. In deducing title, you must in any view of the question go beyond the will, for the possessor must show that the terms of the will have been observed, and that he holds under an agreement, or vendue, as it is expressed, with the other devisees. This would put a purchaser on inquiry, which would lead to a knowledge of the situation of the parties as *to the payment of the price of the land,* and no prudent person would rest short of full information on this point. And this was the understanding of the devisees. No deed was given, no notes nor bonds. They seem to have rested on the security of the property itself. When one of the devisees received his share in full, he then, and not until then, executed a release; and when Jacob was advised to have the release drawn including both Christian and John, he refused, alleging as a reason, that John's share was unpaid. If, as has been supposed, the will was a title in itself, a release, though expedient, was unnecessary. This case differs from Coinard *v.* Coinard, 6 *Ohio Rep.* 114, in this—there, the real estate is given to the devisee charged expressly with the payment of the legacy; here it is given to all the devisees, and can be vested in one only by the consent or agreement of all, though the title to the whole tract depended on the future act of all the parties, as directed by the testator. In some of its features it resembles Birdsal *v.* Birdsal *et al.* 1 *Paige* 32. In that case the court decided that the devisee who accepted the devise became personally liable for the legacies, but,

[Zerby v. Zerby.]

notwithstanding, the legacies were an equitable charge upon the estate.

As to the time Jacob was in the possession of the land, that is only material as affecting the question of payment. It can have no operation on the question of lien. The court of common pleas were of opinion that the title passed directly from the testator to the highest bidder, and that the legal title never was in the other devisees. But in this assumption we think they were in error, for it must have been in them until, by an agreement amongst themselves, they ascertained which should be entitled to it. The legal title cannot be in abeyance, and if not vested in the devisees, it may be asked, in whom was it vested?

The issue, as directed, had a twofold object:—First, to ascertain the amount due from Jacob to John Zerby; and, secondly, if any thing was due, whether it was a lien on the land of Jacob? And singular as it may seem, both issues are directed to the same jury. The jury having settled the question of fact, we cannot disturb the verdict, although we differ from the court below as to the question of law. The latter can in no way affect the former, for the question of indebtedness was the only proper matter to refer to the jury—the orphans' court being fully competent to pass upon all questions of law.

The judgment on the verdict, finding that Jacob was indebted to John in the sum of 1500 dollars is affirmed: and the record is remitted, with direction that that sum is a lien on the land of Jacob, acquired by virtue of the will of Christian Zerby, deceased.